No. 24-4966

---

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

BRIAN BROWN,
*Plaintiff-Appellant*,

vs.

CEMEX CONSTRUCTION MATERIALS PACIFIC, LLC,
*Defendant-Appellee*.

---

On Appeal from the United States District Court
for the Eastern District of California
No. 2:22-cv-02128-WBS-DB
Hon. William B. Shubb

---

## APPELLANT'S OPENING BRIEF

---

Joshua H. Watson
CLAYEO C. ARNOLD, PC
865 Howe Ave
Sacramento, CA 95825
(916) 777-7777
jwatson@justice4you.com

*Attorney for Plaintiff/Appellant*
*Brian Brown*

December 2, 2024

## TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................2

TABLE OF AUTHORITIES ............................................................3

JURISDICTIONAL STATEMENT ..................................................4

ISSUES PRESENTED ....................................................................5

STATEMENT OF THE CASE ........................................................6

    I.    PROCEDURAL HISTORY .........................................................6

    II.  RULINGS PRESENTED FOR REVIEW .......................................6

    III.FACTS RELEVANT TO THE ISSUES PRESENTED FOR REVIEW .....................6

SUMMARY OF THE ARGUMENT ..............................................20

ARGUMENT.................................................................................22

CONCLUSION & RELIEF REQUESTED ...................................28

FORM 8 CERTIFICATION ..........................................................29

# <u>TABLE OF AUTHORITIES</u>

Cases

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 ................................... 23

*Balint v. Carson City*, 180 F.3d 1047, 1054 (9th Cir. 1999) .................... 22

*Mattioda v. Nelson*, 98 F.4th 1164, 1178 (9th Cir. 2024) ........................ 22

*Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1409 (9th Cir. 1996) . 23

*Voigt v. Savell*, 70 F3d 1552, 1564 (9th Cir. 1995) ................................. 22

*Weil v. Citizens Telecom Servs. Co., LLC*, 922 F.3d 993 (9th Cir. 2019) 22

Statutes

28 USC § 1291 ......................................................................................... 4

28 USC § 1331 ......................................................................................... 4

28 USC § 1367 ......................................................................................... 4

42 USC § 12112 ................................................................................... 4, 23

Cal. Government Code § 12940 ............................................................. 23

## JURISDICTIONAL STATEMENT

Subject matter jurisdiction for the U.S. District Court was based on federal question and supplemental jurisdiction. The Complaint states a claim for employment discrimination in violation of the United States Americans with Disabilities Act, implicating 42 USC § 12112 [ADA non-discrimination] and 28 USC § 1331 [federal question jurisdiction]. Factually related claims for violation of the California Fair Employment & Housing Act fall within supplemental jurisdiction. 28 USC § 1367.

On July 10, 2024, the District Court granted final judgment against Plaintiff-Appellant based on a Motion for Summary Judgment. The judgment was final and disposed of all claims, giving this Court jurisdiction pursuant to 28 USC § 1291 and FRAP 3. Notice of Appeal was timely filed pursuant to FRAP 4(a)(1)(B) on August 8, 2024. Notice of Appeal 3-ER-405; USDC Docket 3-ER-411. This Court set an initial due date for the Appellant's Opening Brief of October 31, 2024. On October 17, 2024, this Court approved a streamlined request extending the deadline to December 2, 2024. CA9 Emailed Order, 3-ER-389. This brief is timely submitted on December 2, 2024.

## <u>ISSUES PRESENTED</u>

1. Whether the District Court erred in granting summary judgment on BRIAN

   BROWN's failure to hire disability discrimination claims by weighing

   competing evidence rather than viewing disputed facts in the light most

   favorable to Brown where CEMEX's hiring decision turned solely on

   disputed interview responses that Brown documented as matching CEMEX's

   own high-scoring criteria, while CEMEX managers provided inaccurate and

   allegedly false testimony related to their prior knowledge of his prosthetic

   leg.

## STATEMENT OF THE CASE

### I.     PROCEDURAL HISTORY

The Complaint was filed November 29, 2022.  USDC Docket, ER-406.  The Answer was filed February 2, 2022.  Id.  The U.S. District Court granted summary judgment on July 10, 2024.  USDC Docket, 3-ER-410.  Notice of Appeal was filed and the transcript of the hearing on Motion for Summary Judgment was requested August 8, 2024.  USDC Docket, 3-ER-410-411.

The due date for this brief was extended via a streamlined request to December 2, 2024.  CA9 Emailed Order, 3-ER-389.

### II.    RULINGS PRESENTED FOR REVIEW

Plaintiff/Appellant BRIAN BROWN appeals the grant of summary judgment in favor of Defendant CEMEX.  The order granting summary judgment is found at ER-3, and the judgment is found at 1-ER-2.

### III.   FACTS RELEVANT TO THE ISSUES PRESENTED FOR REVIEW

Plaintiff/Appellant BRIAN BROWN lost his lower left leg in 1990 and since then has used a prosthetic.  Brown Declaration at 2-ER-101, para 2; Brown Deposition at 2-ER-168-171.   Mr. Brown worked for Teichert & Sons from 1994 to 2018 as a Ready Mix Driver (meaning a cement truck driver).  Brown Sworn EEOC Charge at 2-ER 225.

In the summer of 2018, Defendant CEMEX took over operations of the Teichert concrete facilities in the Sacramento area, including in Roseville. Webdell Declaration 2-ER-53; Haymore Declaration 2-ER-109; Skulick Deposition at 2-ER-140-142; Skulick Declaration at 3-ER-384. As part of the takeover, CEMEX interviewed existing Teichert employees to see whether they would be hired to continue working at the facility under CEMEX. A panel of three people conducted interviews for the Roseville location: Tony Skulick, Vince Ramirez, and Richard DeFazio. Skulick Deposition 2-ER-142-143. The corporate transaction was an asset sale, and CEMEX denies receiving any human resources information about potential hires from Teichert. Skulick Declaration at 3-ER-384-386; Pines Declaration at 3-ER-308. CEMEX maintains (via its Vice President, General Manager, and interview panelist Tony Skulick) that hiring decisions were made exclusively on the basis of an applicant's responses to five standardized interview questions in an oral interview. Skulick Declaration at 3-ER-384-385 ["Our hiring decision of the Teichert drivers was based solely on the drivers' interview scores."].

It is important that the interview questions were scored numerically. Skulick Declaration at 3-ER-385, para 4. Each of the five questions could receive up to five points, so that a total of 25 points could be awarded. Id. All three CEMEX interviewers agree on the questions asked:

Safety Questions:

1.    What does safety mean to you in a workplace environment.

2.    If you observed a fellow employee performing an unsafe act, what would you do?

Behavioral Questions:

1.    Question: Recall a time you made a mistake while working with others and had to make it right:

2.    Question: Describe a time when you found a customer problem especially difficult to deal with:

3.    Question: Tell me about a time when you worked with someone who was difficult to get along with:

Blank Questionnaires from Depositions at: 2-ER-58-59 (Ramirez Copy); 2-ER-61-62 (Skulick Copy); 2-ER-64-65 (DeFazio Copy); Depo of Ramriez at 2-ER-120-121; Depo of Skulick at 2-ER-144-145; Depo of DeFazio at 2-ER-74-76.

CEMEX maintains that BROWN gave an especially low-quality interview, and thus he was not hired. Skulick Declaration at 3-ER-385. BROWN allegedly gave such bad answers that he received only a score of 9/25. Id. But did he? That is the material fact in question, and one the District Court decided by weighing the

evidence instead of determining merely whether a question of fact existed for the jury to decide.

 The interview scores and related notes were preserved by Richard DeFazio. Notes at 2-ER-56; DeFazio Deposition at 2-ER-76-78, 87-90. As a result, those of us who were not in the room have more insight into events here than might be presumed for a claim based on an interview-based discrimination claim. Moreover, the interviewers testified in depositions in this case about what constituted an ideal response to each question. We know what constituted a score of 25.

 BROWN preserved a documented account of his answers in his *pro se* EEOC administrative complaint long before civil discovery – years before the interview's deposition. Brown Notes to EEOC at 2-ER-97-98. We know what BROWN says he said in the interview before CEMEX described the ideal responses. And so we have two admissible accounts of what was said, but an agreed upon understanding of how the words said would translate into a scored result. We have a dispute about what happened in the room: and the jury can decide the case by deciding whose account they believe. This is a matter of fact for a trial.

The section below provides a comparison of what BROWN indicates he stated in his interview with what CEMEX interview panelists described as a 5-point or ideal answer:

*General Comments by BROWN to EEOC:*

The notes dated 5/9/2019, do not reflect the entire responses I provided in my interview…

My interview lasted about 15-20 minutes. The notes provided are very brief and do not include the majority of the content from my interview. When I returned home after my interview, I recall sharing with my family how great I felt about the process. I felt that I was able to respond to all of the questions asked and I felt very positive. Now, as I review the notes, I see that very little of what I said was documented. I feel the decision to not hire me was made prior to my interview. Hearing from some drivers at CEMEX, that Ed Rogers made a statement at a meeting held at CEMEX with their drivers- He said "we are in the process of weeding out the trouble makers." I am left to wonder if the fact that I have a disability automatically placed me in the "trouble maker" category. Perhaps, CEMEX simply did not want to deal with a person who may require accommodations in the work place.

2-ER-97-98 (Response as Documented to EEOC); 2-ER-100-103 (Brown Declaration Confirming Notes as Past Recollection Recorded).

Safety Questions:

1.      What does safety mean to you in a workplace environment.

*BROWN's Response:*

The notes dated 5/9/2019, do not reflect the entire responses I provided in my interview.

#1= I shared that I was a Smith System trainer and that safety in this job is everything. The training that I received to become a Smith System trainer, taught me the importance of communication. I am confident that I provided detailed responses to all the questions posed.

ER-97-98 (Response as Documented to EEOC); ER-100-103 (Brown Declaration Confirming Notes as Past Recollection Recorded).

Note: Smith System is a recognized method of trucking safety. *See,* DeFazio and Skulick Depositions at 2-ER-91, 152-154

*CEMEX's Documented Alleged Response and Score:*

Score: 4

Safety means everything. Trained 100% of all employees at the plant. Was a Smith Systems trainer. Equipment is unforgiving. Every step you take must be planned.

11

DeFazio Notes at 2-ER-56; DeFazio Deposition at 2-ER-76-78, 87-90.

*CEMEX's Ideal Response:*

Mr. Ramirez stated the ideal response should indicate "safety is everything to them. They want to go home to their family." 2-ER-121-123.

Mr. Skulick wanted "a personal response" that could lead to a "back and forth" conversation. 2-ER-151

Mr. DeFazio believed an ideal answer would identify safety as an important value and discuss qualifications. 2-ER-82-83.

2. <u>If you observed a fellow employee performing an unsafe act, what would you do?</u>

*BROWN's Response:*

#2= I expressed that I was comfortable approaching my co-workers if I witnessed an unsafe act. The fact that I was a Smith Trainer for so many years, provided me with the confidence to provide on the job feedback to my peers.

2-ER-97-98 (Response as Documented to EEOC); 2-ER-100-103 (Brown Declaration Confirming Notes as Past Recollection Recorded).

*CEMEX's Documented Alleged Response & Score:*

Score: 1

Feels comfortable approaching fellow employees.  People get complacent. Sometimes they need to be reminded.  [A margin note "Did not give examples" straddles questions 2 and 3.]

DeFazio Notes at 2-ER-56; DeFazio Deposition at 2-ER-76-78, 87-90.

*CEMEX's Ideal Response:*

Mr. Ramirez would give top marks if an interviewer indicated "if he observed an unsafe act, he would try to stop the guy or get his attention to 'Hey, dude, no do that, you know, that's not a very safe way of doing it…or bring to to a manager's attention."  A specific example was not needed, <u>but if an example was wanted the applicant would be asked.</u>  Mr. Ramirez could not recall a time he ever asked for an example.  Ramirez Deposition, 2-ER-123-125.

Mr. DeFazio indicated the ideal answer would reflect that an applicant was willing to step in and explain to another employee what was safe.

DeFazio Deposition, 2-ER-83-84.

<u>Behavioral Questions:</u>

1.    <u>Question: Recall a time you made a mistake while working with others and had to make it right:</u>

*BROWN's Response:*

13

#1= I provided an example of a mistake I made while working and the steps I took to resolve it. Their notes have the example of the lock pin included- yet on the side there is a note that reads "did not give example." That just does not make sense- the example is there, in their own notes, yet they say no example given?!

2-ER-97-98 (Response as Documented to EEOC); 2-ER-100-103 (Brown Declaration Confirming Notes as Past Recollection Recorded).

*CEMEX's Documented Alleged Response & Score:*

Score: 1

Did not put the lock pin on the sprinkler. Fixed the issues by putting a double lock in the pin process."

[A margin note "Did not give examples" straddles questions 2 and 3 (#3 in the notes is #1 in the behavioral section).]

DeFazio Notes at 2-ER-56; DeFazio Deposition at 2-ER-76-78, 87-90.

*CEMEX's Ideal Response:*

Mr. Ramirez testified that the ideal answer would be something similar to a driver misreading a text, delivering a load to the wrong place, and calling in to report it. Ramirez Deposition at 2-ER-125.

Mr. DeFazio testified that the ideal answer would reflect a desire for "people to take ownership." DeFazio Deposition at 2-ER-84.

2.    Question: Describe a time when you found a customer problem especially difficult to deal with:

*BROWN's Response:*

#2= I provided a detailed account of how I resolved the difficult situation I had with a customer when my truck got stuck. I recalled this situation because it was my first load delivered using my new automatic transmission truck. I explained to the interview panel that I contacted my truck boss, Tom Staggers. I explained the situation to him and with his verbal support and guidance, I was able to get the truck out. The customer was Colossal Construction. Once I was able to get the truck out, I was able to deliver the product to the customer and he was relieved and thanked me. I explained this entire situation during my interview, yet there is a side note on the interview note that reads "Didn't explain how issue was resolved." That is not true, I did.

2-ER-97-98 (Response as Documented to EEOC); 2-ER-100-103 (Brown Declaration Confirming Notes as Past Recollection Recorded).

*CEMEX's Documented Alleged Response:*

Score: 2

Automatic truck. Customer told him that the job was up the hill. Got his truck stuck and had to resolve the issue. [Margin Note states, "Did not explain how issue was resolved.]

DeFazio Notes at 2-ER-56; DeFazio Deposition at 2-ER-76-78, 87-90.

*CEMEX's Ideal Response:*

Mr. Ramirez indicated the ideal answer would discuss a problem with a customer being upset, possibly with follow up questions being asked. Mr. Ramirez did recall that he had asked an applicant for more detail in response to this question. Ramirez Deposition at 2-ER-125-127.

Mr. DeFazio expressed that CEMEX is "big on customer service" and an ideal example would give an example of something gone wrong and resolved. DeFazio Deposition at 2-ER-85.

3. Question: Tell me about a time when you worked with someone who was difficult to get along with:

*BROWN's Response:*

#3= The example I provided to this last question is not noted in the remarks. I mentioned a co-worker named David Dahl, and shared an incident when I called on the radio to request rock and David made a comment on the radio that bothered me. He said, "I guess some people get special treatment around here." I explained in my example that I was able to resolve the issue by

16

speaking directly to David. I also shared that I prefer to work things out, man to man.

2-ER-97-98 (Response as Documented to EEOC); 2-ER-100-103 (Brown Declaration Confirming Notes as Past Recollection Recorded).

*CEMEX's Documented Alleged Response:*

Score: 1

Feels that everyone can be in a bad mood. He's been in a bad mood before and had run ins at work but feels the he has the ability to resolve those issues.

DeFazio Notes at 2-ER-56; DeFazio Deposition at 2-ER-76-78, 87-90.

*CEMEX's Ideal Response:*

Mr. Ramirez testified that an ideal answer would reflect the ability to dealing with "demeanor" issues in an industry where "some guys are pretty hard headed" and so an ideal answer reflects "taking the situation, calming it down." Ramirez Depo at 2-ER-128.

Mr. DeFazio testified that an ideal answer would reflect conflict resolution skills. Defazio Depo at 2-ER-85-86.

Summarizing the above, BROWN received low marks on all but the first question. Yet reviewing his account of the words he stated with the admitted

scoring criteria used by CEMEX and his responses as recorded by CEMEX reflects that CEMEX misstated his words in order to give him a low score. This is <u>not</u> the same as saying CEMEX misapplied its criteria within the business judgment rule. It is saying that CEMEX knew its criteria – which the Vice President and General Manager stated came from its legal department – and contorted the facts to avoid hiring a person with a disability.

Evidence of a guilty mind comes not just from the misreporting of the interview contents, but also from the interviewers' efforts to minimize evidence of their notice of BROWN's disability. Prior to the interviews, both Tony Skulick and Vincent Ramirez visited the Roseville plant where BROWN worked. While there, they met and spoke with BROWN while BROWN was wearing shorts with this prosthetic visible. Yet Mr. Skulick and Mr. Ramirez sought to downplay their knowledge of BROWN's disability. They denied that Mr. Ramirez had visited the Roseville plant such that he had never observed BROWN other than when BROWN wore pants at the interview, ostensibly because pants would make it impossible to notice BROWN's disability. Yet discussions with witnesses make it clear that Mr. Ramirez did visit Roseville plant on a number of occasions prior to the interviews. Were it not for some whistleblowing employees the lie would be a swearing match, much like what happened in the interview room. However, with the employees stepping forward, it is clear that CEMEX is willing to make false

statements on the record, even where circumstantial to the primary basis of liability. And as jurors are instructed, once a witness is found to have lied one may elect to disbelieve them entirely. In context, the misrepresentations about and around Mr. Ramirez' visit to the Roseville facility (as well as Mr. Skulick's conversation with BROWN prior to the interview) are material matters that could sway a jury. *See,* Webdell Declaration at 2-ER 52, Haymore Declaration at 2-ER 108 [witness statements re Ramirez at the facility]; Skulick Deposition at 2-ER-135 et seq, Ramirez Deposition at ER-111 et seq; Brown Deposition at 2-ER-99 et seq.

## SUMMARY OF THE ARGUMENT

The question in this matter is simply whether the dispute concerning what words BROWN spoke in his interview for employment with CEMEX constitutes a dispute of material fact sufficient to put this matter to a jury. It must. The members of the CEMEX interview panel testified about what constituted ideal high-scoring answers to the standard interview questions from the legal department. BROWN says he essentially gave those answers. The panelists say he gave different answers. Note that BROWN does not say the panelists misapplied CEMEX criteria. BROWN contends that the panelists misrepresented his statements to manipulate the outcome of the standardized hiring process. That is a logical inference from the fact that CEMEX documented BROWN giving interview response other than the ones he actually provided, particularly when coupled with panelist's going to some length to obscure the degree to which they, particularly Mr. Ramirez, knew about BROWN's disability and the occasion on which they met him while his prosthetic was open an obvious.

Since a jury could hear about the misrepresented interview answers, place it in a context of misrepresentations about the nature and extent of personal knowledge of BROWN's disability, and find that CEMEX's account is not-credible but BROWN's is; and since such a finding could lead to a decision on

BROWN's favor, all other things being equal, it is not appropriate to grant

summary judgment on the bases here.

# ARGUMENT

## I. STANDARD OF REVIEW

The Court of Appeals reviews "a district court's grant of summary judgment de novo 'to determine whether, viewing all evidence in the light most favorable to the nonmoving party, there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law.'" *Mattioda v. Nelson*, 98 F.4th 1164, 1178 (9th Cir. 2024). The court "does not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial." *Balint v. Carson City*, 180 F.3d 1047, 1054 (9th Cir. 1999). This Court does not defer to the lower court's ruling, but independently considers the matter anew, as if no decision had been rendered on the matter below. *Voigt v. Savell*, 70 F3d 1552, 1564 (9th Cir. 1995).

In reviewing motions for summary judgment in the employment discrimination context, a court must "zealously guard[] an employee's right to a full trial, since discrimination claims are frequently difficult to prove without a full airing of the evidence and an opportunity to evaluate the credibility of the witnesses." *Weil v. Citizens Telecom Servs. Co., LLC*, 922 F.3d 993, 1002 (9th Cir. 2019). "[V]ery little ... evidence is necessary to raise a genuine issue of fact regarding an employer's motive; any indication of discriminatory motive ... may

suffice to raise a question that can only be resolved by a factfinder." *Id.* (quoting *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1409 (9th Cir. 1996)).

## II. PLAINTIFF COMPLAINS OF DISCRIMINATION IN HIRING UNDER THE AMERICANS WITH DISABILITIES ACT AND FAIR EMPLOYMENT AND HOUSING ACT.

The Americans with Disabilities Act prohibits employers from discriminating against qualified individuals on the basis of disability in hiring decisions. 42 U.S.C. § 12112. California's Fair Employment and Housing Act does the same. Cal. Government Code § 12940. Plaintiff/Appellant BRIAN BROWN complains the Defendant/Appellee CEMEX violated these statutes by making false statements about the content of his verbal interview responses to game an internal hiring process set up by CEMEX's inside counsel. Complaint at ER 391. BROWN contends the lies about what he said, not application of business judgment, was discriminatory. The word "lies" is at times a red line in civility, but this is an employment discrimination matter, and lies are part of the territory and should be regarded as such.

The parties and District Court recognized that the shifting burden procedure of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 applied this case. Under the procedure, BROWN needed to show a prima facie case to shift a burden to CEMEX, provided that CEMEX first met its burden under Summary Judgment

procedures. CEMEX did not attempt to shift the burden on all elements of the case. Instead, CEMEX essentially asserted that the three interviewers (Skulick, Ramirez, and DeFazio) applied a neutral interview protocol and in any event operated under the auspices of the business judgment rule. The two arguments are, from a factual standpoint, one in the same. If the interview panel crafted a false account of BROWN's interview responses in order to prevent him from being hired, then they acted with intentional discriminatory intent, and they also failed to apply business judgment. This is the key to the case: It is not about merely whether BROWN should have been given higher scores under CEMEX's scoring rubric. It is about whether the interviewers lied to game the rubric with discriminatory intent.

## III. THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT BECAUSE MATERIAL FACTUAL DISPUTES EXIST REGARDING CEMEX'S TRUE REASONS FOR NOT HIRING BROWN

The District Court improperly granted summary judgment by weighing competing evidence rather than viewing the facts in the light most favorable to BROWN as the non-moving party. All of BROWN's proffered evidence was admitted, and it reflected a plausible account that BROWN provided responses in his interview that, by the interviewer's own standards, would have led to a high score. The fact that the panelists scored him low based on false representations

gives rise to a reasonable inference that they acted with discriminatory intent. Why else lie about what he said? The debate about whether Mr. Ramirez ever visited the facility and whether Mr. Ramirez and Mr. Skulick ever saw Mr. Brown with his prosthetic exposed in shorts only sharpens the appearance that they acted with discriminatory intent. Why lie about visiting a cement plant being purchased in a large business deal?

The District Court's commentary during the hearing reflects a weighing of the evidence, as does its Order. The subtext is that the District Court believed CEMEX over BROWN. However, that is the province of the jury.

In Safety Question 2 concerning what to do if observing a coworker being unsafe, BROWN received a score of 1/5 because he did not give examples, and said he is comfortable approaching fellow employees, that people get complacent, that they need to be reminded, and that he does so within the context of being a Smith Systems safety trainer. Yet CEMEX interviewers noted that he did not give examples, omitted his safety trainer discussion, and sidestepped the affirmative statement that he has confidence in approaching coworkers to provide "on the job feedback to my peers." By omitting BROWN's positive comments, the panel was able to give a low score.

In Behavioral Question 1 concerning what to do to make a mistake right, CEMEX apparently claimed BROWN did not give an example. By ignoring his example, CEMEX was able to ignore that he met the ideal criteria to take ownership of errors and fix them. This despite BROWN acknowledging a specific operational error he mande and explaining how he corrected it. Again, the revisioning of his response was used to justify a low score.

In Behavioral Question 2 concerning handling difficult customer problems, CEMEX claimed BROWN failed to explain how he resolved a customer's issue. CEMEX's own criteria indicated the optimal response was to identify a customer problem and focus on service. Omitted from CEMEX's account of BROWN's answer was his extensive discussion about a stuck truck, a customer who needed reassurance, and interactions with a supervisor to resolve the situation. Again, a low score in an information-suppressed setting.

In Behavioral Question 3 concerning inter-employee conflict, CEMENX ignored and omitted BROWN's detailed commentary about his interaction with a co-worker who claimed that BROWN, a person plainly know to have a disability and walking around the workplace with shorts showing his prosthetic leg, got "special treatment." This is omitted and so again BROWN is given a very low score.

If the finder of fact believes BROWN that he said what he documented in his prelitigation correspondence to EEOC, then the finder of fact can certainly determine that CEMEX's interviewers misrepresented his statements in order to force a low score and non-hire. The view of the District Court and CEMEX tends to allow mere use of a scored interview form as a shield against any accusation of discrimination. Here, the scoring mechanism simply provides the means by which the panelists accomplished their discriminatory intent.

CEMEX interviewers also went to lengths to craft and support a story that Mr. Ramirez never visited the Roseville CEMEX plant and that Mr. Ramirez and Mr. Skulick never saw BROWN wearing his shorts with his prosthetic visible. The finder of fact could see this set of misrepresentations as supportive corroboration regarding a discriminatory state of mind.

This evidence need not be believed by the District Court or even this Court. The relevant legal question is whether a jury could believe it, and if that believe could be material. Plainly, if someone believes BROWN's account over CEMEX's, it is entirely possible that the panelists lied about what happened in the interview room, and thus they were discriminatory.

If they did behave this way, there is no business judgment defense. Business judgment does not cover discriminatory intent. This is axiomatic.

## **CONCLUSION & RELIEF REQUESTED**

For these reasons, BROWN requests that the District Court's grant of

summary judgment be reversed and the case remanded for trial.

Respectfully submitted,

Dated: December 2, 2024          /s/  Joshua H. Watson
                                 Joshua H. Watson (SBN 238058)
                                 CLAYEO C. ARNOLD, PC
                                 865 Howe Avenue
                                 Sacramento, CA 95825
                                 Telephone: (916) 777-7777
                                 Facsimile: (916) 924-1829
                                 jwatson@justice4you.com

                                 Attorneys for Appellant
                                 *Brian Brown*

**<u>FORM 8 CERTIFICATION</u>**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 24-4966

I am the attorney or self-represented party.

**This brief contains** 4,649 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated [          ].

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ Joshua H. Watson **Date** December 2, 2024

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8** *Rev. 12/01/22*